Good morning. Let me just welcome you, counsel, to this very unique oral argument, but we're happy to have counsel participating in the case. I'm honored to have this experience with my colleagues, Judge James Dennis and Judge Katharina Haynes. So it's different. You all have gone through the script, so to speak, so just, you know, stay within the bounds, be alert for questions from the panel. Other than that, we're good to go. You may continue. Thank you, Your Honor. As I said, I'm Samantha Kuhn from the Federal Public Defender's Office, and I represent Troy Kendrick in this case. Now, this entire case was built on the wiretap of Mr. Kendrick's phone. So with the court's permission, I'd like to start off by talking about the suppression issue, which is the central issue in this case. And in this case, there's no dispute that there were several factual inaccuracies in the wiretap affidavit, and specifically in the probable cause basis. And so this case is really about intentionality and materiality. The questions are, did the agent act at least recklessly in making these misrepresentations, and do the misrepresentations negate probable cause? Now, there's also several exculpatory material omissions in the affidavit that we discussed in the briefing, and I'll touch upon those a little bit later. But I think at the outset, it's really important to clarify that this court doesn't even need to reach the issue of material omissions in this case, because the false statements alone eliminate probable cause and warrant suppression. So when we're talking about materiality, whether the misrepresentations affected probable cause, the way we evaluate that is by removing the false statements from affidavit and looking at the reconstructed affidavit to determine whether probable cause still existed. And so here, we look at these false statements that, again, are undisputed. There's one about identifying, CS identifying Mr. Kendrick as a supplier for a January transaction, and that statement's removed. And then the other false statements relate to the contextual basis or the factual basis for the agent's conclusion that two of the three intercepted calls between Mr. Kendrick and Derek Jones were drug-related. And so when we look at those false statements in particular for those intercepted calls, we have the undisputed false statements about the May 17th call where the affidavit alleged that Jones called Mr. Kendrick immediately after talking to a drug customer. And we also have the May 20th call where the allegations attributed a statement to Mr. Kendrick that he was at this gas station where Jones was known to conduct drug deals. Both of those false statements go directly to the factual basis or the agent's conclusions that they were related to drugs because the context of the calls themselves didn't allude to drugs and didn't mention drugs. So we had to rely on the surrounding context for the factual basis. Once you remove all of the misrepresentations related to the January transaction, the confidential sources, veracity, and these intercepted calls, we're left with a skeleton of an affidavit that basically only has two factual allegations remaining to support probable cause. The first is that Jones potentially met with someone in Mr. Kendrick's garage during a drug deal that prior to this affidavit being written. And the second factual allegation is a single text exchange from May 12th in which Jones contacted Mr. Kendrick and asked him where he was shortly after talking to another drug customer. That's plainly insufficient to establish probable cause for a highly intrusive wiretap. Those two factual allegations don't establish probable cause to believe that Mr. Kendrick was engaged in drug trafficking at all, especially not in June, four months after that February allegation. But isn't it a position that the conversations that use sort of slang terms for drugs can't count? I mean, because if we have to have a person say, I would like to buy cocaine, there's a lot of warrants that won't be valid. So we had a lot of conversations that I know you all take the position, you know, we're neutral and we're innocent, but we have this drug lingo that is used all the time. And if that's not good enough for a warrant, then it's going to rarely be anything good for a warrant. Isn't that right? I think the key distinction here is that there was no reliance on any words being used in relation to this particular phrase, you know, is known to be a code word for cocaine or this or that. Here for this wiretap affidavit, agents didn't make any kind of allegations or provide any kind of testimony or expert information saying the actual words used by Mr. Jones and Mr. Kendrick were related to drugs. He relied solely on the surrounding context and specifically the timing in relation to Jones's other drug dealing activity. So specifically the relationship between the timing of the contact, Mr. Kendrick and Jones talking to other people about drugs, and then the, I guess, false allegation or false conclusion that Mr. Kendrick was agreeing to meet him to provide something at this drug dealing location. So again, you know, there are cases and I think it is true that you could include expert type testimony or interpretation of that nature in an affidavit, but we don't have that here. There's no, I guess, interpretation or definition of those words themselves. It's based solely on the context. And once you correct the false statement regarding the context, the entire basis collapses. And that's why those calls no longer provide any support for the probable cause findings. And I think the main cases I would say in this circuit and in this court that I think are the most instructive in this regard, obviously probable cause is always a case-by-case, very fact-intensive analysis. And so you can't, you know, it's hard to find a case that would carry over directly. But if you look at the case law from this court's opinion in both Ortega and Pope, I think those are really instructive. In Ortega, specifically the published 2017 case, that was the case where they basically had the false statement was a client reported that a CS had told him specific information about the target being involved in drug activity. And actually the CS had conveyed that information through a third agent. And so that was deemed to be false. And the court said that has to be excised completely because it's clearly a false statement. In that case, the court found that probable cause would no longer exist without that information. And the remaining information was that the police had confirmed Ortega lived at a specific house and that an unspecified number of individuals briefly entered the house to engage in unknown hand-to-hand transactions with someone there. And the court found that wasn't sufficient on its own without a reliable report that the target was actually, you know, engaged in drug dealing once that was removed from the affidavit. And similarly in Pope, and I believe Judge Dennis, you're on this opinion, that was a case where the affidavit relied solely on a controlled drug buy that occurred 78 days prior to the affidavit being prepared. That opinion actually had to affirm because at the time the fact that the defendant hadn't raised a false statement issue below actually ended up in labor. But it's important to note that everyone agreed, including the government, including the district court, and including this court, that a controlled drug buy where they actually knew the target was the person that sold the drug from 78 days before the affidavit was not sufficient to create probable cause for a search. So here, when we remove all the false statements in the affidavit, we're left with an allegation by a CS that Jones may or may, or sorry, the surveillance showing that Jones went to Mr. Kendrick's garage to get drugs four months before the affidavit was prepared. And then a single text where Jones, after talking to someone else about drugs, text Mr. Kendrick and just asked him where he is. Mr. Kendrick says he's leaving Home Depot. And he says, okay, holler at me when we get back. And that is the exact type of information that would not be sufficient to either establish that Mr. Kendrick was drug dealing, and especially not that he was using his phone to engage in drug dealing or that evidence of that would be found on his phone. And so moving on to the recklessness issue, the reason I argue this in this order is because the courts have found repeatedly that materiality is a very central consideration in determining recklessness. And the circumstances in this case necessitate an inference of at least recklessness by agent arsenal. Here we had an affidavit where the sole basis for probable cause was this January and February transaction information from the CS, and then these three intercepted calls. First, he perpetuated a false identification of Mr. Kendrick as a drug supplier, even though the police report explicitly stated that the identification was wrong and was determined to be wrong by the officers. And then he made three separate errors in summarizing the three phone calls that served as the entire basis for the assertion of probable cause. And those calls were only minutes long, and he misrepresented critical facts about each of them, or about two of them, that served as the basis for his drug-related conclusion. This court has recognized that the nature of misrepresentations alone can warn an inference of recklessness. And again, I would refer the court to Ortega and actually the subsequent unpublished opinion from 2018. In that case, the court actually found that recklessness hadn't been proven, but it provides a lot of considerations that the court took into account. Well, let me ask you this. I mean, there's no doubt, let's say it's mistaken or it's erroneous, but we have lots of cases that are imperfect. So what is it from the record that gets you to an error? I mean, you're arguing recklessness. So what is it that gets you beyond just, okay, it's an error of whatever magnitude, but we have plenty of cases where, you know, there are imperfections, you know, dates wrong, whatever. So tell us what, from the testimony, the record, gets you to recklessness, and then tell me the case that's most like this one from the standpoint of getting you home on that issue. I would say that the record itself, the nature of the misrepresentations is what gets us to recklessness, the number in nature. Because when you look at this, I mean, the case law, again, the focus is materiality. And the court has said that when something is critical to the probable cause finding is clearly a crucial piece of information, an assumption or inference of a case. This court's opinion in NAMR, U.S. v. NAMR, that was a case where the affidavit presented contained information. It was about an economic crime. It was an allegation that the defendant was basically engaging in transactions where it was unlawful selling of securities without a license. And the affidavit provided factual information about the transactions he was doing. And then it included a statement saying that the SEC, an SEC commissioner, had said that those transactions would be classified as securities. And that actually turned out to be false. The information that the commissioner had actually provided was that it was a qualified opinion that they would be classified, but there was no formal classification procedure. And in that case, there was no testimony or evidence about why or how the science ended up including those misrepresentations, whether it was intentional, whether it was reckless, whether they thought they represented it correctly. The court found that the nature of that misrepresentation alone established recklessness, because that is what created the probable cause to believe that the defendant was actually engaging in criminal activity. And so I think that's probably the strongest case. Again, in Ortega, while the ultimate conclusion that there could have represented that the CS conveyed the information through a third officer, and that that would have actually resulted in a valid warrant. And so that information went to the court's determination of, okay, well, we can't really tell if this is reckless or if this is just negligent, because there was very little materiality to the actual nature of the error. The actual statement itself was material to probable cause, but the nature of the error, the failure to explain how the information was conveyed, wasn't considered to be very strong or material. And the court found that it was plausible that he would have believed this to be a true representation. And so looking at the Ortega 2017 opinion and the explanation of why the court remanded, I think that's also very instructive for the fact that the court can reach that recklessness conclusion when you have a situation like this, where there is a number, several misrepresentations, each of which independently undermines the basis for the probable cause conclusion for the relevance of each piece of information. And I think that's what's the key here, to get us to recklessness without the need for a remand for a Frank's hearing. And so as I mentioned before, Aiden Arsenault also omitted material exploratory context from his description of the wiretap evidence. And again, the court doesn't need to get to omissions in this case, because the false statements alone mandate suppression and destroy probable cause. But I think it's also important that those omissions also show recklessness. Those contribute to a finding of reckless disregard for the truth. One example of that, this is an out of circuit case, but there's a case that, I apologize I'm putting the name, but I believe it was a third circuit case where, I'm sorry, a first circuit case, Roman, where the court looked to what they called, less egregious omissions or less apparent omissions that weren't as material. But the court found that looking at all of these as a whole, and looking at this trajectory of this agent, making multiple misrepresentations of facts, supported that conclusion that recklessness should be inferred from the omissions alone and from the false statements alone. And that's my time. I'll save the rest of my argument for rebuttal. Thank you. All right. Thank you. Good morning, your honors. May it please the court. I'm Nicholas Moses. I'm Nicholas Moses at the United States. With me on the briefs are Kevin Boydman, Diane Coates, and Ryan McLaren. I would like to start the discussion of the suppression issue with the materiality or necessity prong, because that is where it should end. Even if you make all of the alterations that the appellant asks us to make, including both the preserved issue regarding the January deal, the misidentification, and all the unpreserved changes regarding the that has sufficient undisputed facts that more than suffice for finding a probable cause. And those are that Garrett Jones in February of 2017, I'm sorry, 16, sold crack to a confidential source. And in the middle of that deal, while DEA watched on recorded surveillance, he walked to Troy Kendrick's house and back. And then three times in many of that year, during the Jones wire there were scenarios where Jones needed drugs and he reached out to Kendrick for help. That's the end of the matter. And that is what the district court found below. When analyzing this in the context of just the January deal, nothing about the unpreserved arguments regarding transcript changes should affect that because they don't change the central narrative, which is that when Jones needed crack, Jones reached out to Kendrick. Kendrick asks us on appeal to toss out all of Special Agent Arsenault's statements regarding those wiretap deals simply because of the individual transcript changes or the mistake about the direction of the call. But that's not the Frank standard. Under Frank's, as applied in this circuit and elsewhere, we make the changes with both any statements and any material omissions and then review the affidavit to see if there's still probable cause. And that's still a simple conclusion here as it was below without the transcript changes. When Jones said, bring me one and Kendrick asked me, that looked like a drug deal. And Jones told the customer that he didn't have the drugs because he flushed them and he needed to meet with his people. And then he didn't respond back to that customer that he was good after getting confirmation from Kendrick that looked to Judge Malazzo like a drug deal. And when a customer asked Jones for a dime and then he asked Kendrick where he was, that all confirmed that Kendrick was a supplier. This court doesn't need to engage in the post hoc interpretations about what conclusions could have been drawn in order to affirm. The question only here is, does the record support the finding of probable cause even with all those alterations and omissions? And the answer is yes. So what is your response to Ms. Kuhn's reliance on Ortega? Well, Your Honor, as to the question between misleading versus a false statement, ultimately that only applies to the January deal, which had the confidential sources, false statement about Kendrick. We agree that that was a mistake. And even if it was treated as a false statement, even if it was an intentional false statement, Judge Malazzo found below, and this court should also find that it was not material because it was the oldest part of the evidence supporting probable cause. Much more persuasive was the next month's deal when DEA watched and recorded on video as Garrett Jones walked to Troy Kendrick's house and back in the middle of a crack deal. And even more persuasive was the subsequent calls months later when Jones reached out to Kendrick for several drug deals when a customer needed the drugs. All of that means that even if Ms. Kuhn is correct that we should toss out the entire January deal as a false statement, it has no bearing on that statement's necessity as to probable cause. Judge Stewart, I'd like to address a question you raised about recklessness, which was how we determine the difference between recklessness versus an innocent or negligent mistake. I think the answer is to look at what was available to the people making the statements at the time. And here, I think there's a false statement underlying the assumption that any difference between special agent Arsenault's transcription in the affidavit and the subsequent trial exhibits must have been the result of Arsenault's recklessness. That's not correct, and I don't think it's fair. By the time Detective Dion DeLillo was drafting the transcripts for trial, which he introduced, he had spent hours meeting with all the cooperating defendants who testified, three of them, Garrett Jones, Michael Sanders, and Travis Carter. He had gotten to understand their speech patterns, the sound of their voice, their idioms, and more importantly, they had had a chance to explain to him all of the code that both friends and family use with long-term acquaintances and that they were using with their drug-dealing co-conspirators. Special agent Arsenault didn't have that advantage. Dion DeLillo also had a month of short, tenuous wiretaps to listen to to become familiar with Kendrick's voice and idioms and code. So, it's not fair to say that just because Arsenault didn't do as good of a job in the affidavit as Dion DeLillo did at trial, we should necessarily infer that Arsenault was being reckless as to the truth, or worse, and tossed out all of his interpretations. That's not what Franks asked us to do, and more importantly, even if Arsenault's mistakes were reckless as to the truth, or worse, none of them were necessary for a finding of probable cause, because the key narrative here is Garrett Jones was shown to be a crack dealer, and during several deals, both the one that was on the wiretap, he went to Kendrick for help when he was supplying his customers. As to the question about relying on drug lingo that you asked Judge Haynes, I don't think it's correct that just because Special Agent Arsenault made mistakes as to individual parts of the transcripts, either the direction of one call or some of the questions about who was the speaker, that we toss out everything he said in the affidavit. Again, that's not the Franks standard. He may have been wrong about who said which words in the call about the gas station, which is an understandable mistake. That call is in the record, and people can listen to it. The voices sound pretty similar, but you don't need to do that, because the point of the call is when Garrett Jones needs drugs, he reaches out to Troy Kendrick, and they agree to meet. Whether they met at a gas station or a house or whether Jones called Kendrick or Kendrick called Jones during their many calls each day, that's not the key fact supporting probable cause. The key fact supporting probable cause is that they were meeting up. If you look at the suppression hearing, Judge Malazzo focused on the substance of their conversations. That's around the record 669, where she was clearly looking at the high-level narrative. Jones needs drugs. He reaches out to Kendrick. She saw that time and again. You don't need special agent Arsenault to interpret. They didn't say, I need 100 grams of cocaine to use Lingo. I need one. I got a dime. This kind of stuff. That's correct, Judge Haynes. The district court looked at that Lingo both in the context of what they had already seen in the investigation, which was Jones going to Kendrick's house in the middle of a deal, and she was able to take special agent Arsenault's statements regarding the Lingo, even if he had made other mistakes as to the transcription. It didn't mean that he can't interpret a dime for the court, although I don't know that she needed the word dime interpreted. Just because he got some fact about the line sheets, whether a call was incoming or outgoing wrong, doesn't mean that he can't say drug dealers often say, bring me one without saying one gram of crack cocaine. Those interpretations still stand. The fact that there were other immaterial changes to the transcripts doesn't change that high-level narrative that when Jones needed drugs, Jones reached out to Kendrick. Unless the court has any other questions about suppression or any of the other issues, we ask that for the reasons explained today and in our briefs, the court affirm Kendrick's conviction and sentence. Thank you. All right. Thank you. Back to you, Ms. Cohn-Verbuttal. Yes, Your Honor. To address a couple of points that Mr. Moses made in his opening, I mean, first of all, and just to revisit the Lingo issue, agent Arsenault never said in the affidavit that drug dealers often say, bring me one. And the use of the word dime was never in any conversations between Mr. Kendrick and Jones. The only factual information, again, that we have remaining once the false information is removed is the allegation from February that Jones walked over to Mr. Kendrick's garage during a drug deal. And then the text from Jones to Mr. Kendrick on May 12th asking where he was after Jones had talked to someone else about drugs. Now, the government doesn't get to rewrite the affidavit when false statements are highlighted. And that's made clear from Ortega. Again, in Ortega, the court looked at this seemingly and ultimately what was concluded to be a fairly innocent mistake where the agent said that he learned something from a CS and it was actually relayed through another agent. And they didn't say, okay, well, we'll remove the part of where he learned the information but keep the substance of what the CS reported. They strike the entire statement. Because the entire point of this is that it's not the agent's role or the responsibility to determine whether probable cause exists and get a warrant. That's the role of the magistrate and the issuing judge. And the agent is responsible for providing sufficient objective facts and allowing the magistrate to look at the totality of the relevant circumstances to decide whether probable cause exists. And that's why this exclusionary rule exists to prevent this exact type of conduct where wiretap records can be selectively quoted and misquoted and, you know, information be omitted to basically support this incriminating picture and incriminating narrative. Now, again, the court doesn't have to make a conclusion that this was done intentionally and that Agent Arsenault purposely manipulated the records to paint this picture and to, you know, avoid disclosing potentially expulsory information to the court. It's enough that he did this many false statements and made this many inaccuracies in providing evidence. So are you saying there's some point to be determined where there's accumulation of mistakes and then that's going to translate to recklessness irrespective of whether there's any other showing of, you know, sort of a mental element. So your argument is that we should view the cumulative number of mistakes and just sort of say, well, based on the number, it's got to be recklessness. It can't just be sloppy or whatever. Where's the line? I think that it's both the materiality and the cumulativeness. I think the materiality of the mistakes alone, even one of these, would be extremely material. But this is multiple mistakes that went directly to the probable cause finding. And they were critical to that finding and to those drug-related conclusions that the officer drew in his affidavit. And then in addition to that, yes, the cumulative nature of it. I mean, this wasn't just one error and this wasn't a simple transcription error. These were facts that went directly to his conclusion. The fact that Jones called Mr. Kendrick immediately after talking to someone else about re-upping his drug supply is what created the basis for him saying, oh, that was a call to go get drugs because he just told someone he needs to re-up. But it turns out Mr. Kendrick is the one. These are the same arguments that were made below in the hearing, et cetera, et cetera. So what's the key point for us that they missed? I mean, they've got credibility. It's the same argument. I don't mean that there's something wrong with that. But I'm just saying, you know, we're here and we're looking at the full record. But I mean, that same case, I mean, what's the missing link? Where did they gear off? I think the critical distinction is that below, none of these inaccuracies in the wiretap records and in the recitation of those facts were presented to the district court. And that's why those end up being under the same error umbrella. And it's important to note that Judge Malazzo, when she found that the January transaction error in Napa David was not reckless and, you know, also her probable cause findings, she specifically talked about how this was just a single mistake. And that weighed heavily in her evaluation of whether it was reckless or intentional versus it being a simple accident and a simple oversight. And so... I know we're running out of time, but I'm going to ask you about another subject. If we get past this and we get to the sentencing, you know, you can talk about cumulative when we're talking about the affidavit, but then you don't want to talk about cumulative when we're talking about the firearm being close to not just Manitou, which maybe somebody could have in their mouth innocently, not just the digital scale somebody got innocently, but X, Y, Z, Q, A, all of them together starts to look like drug paraphernalia as opposed to, or drug selling paraphernalia, as opposed to simply an innocent diuretic or whatnot. Is that true? So I guess your question is for that enhancement that we've argued about. Yeah. So, I mean, I think definitely, you know, I'm sure that the jury in seeing that contributed to their guilty verdict in this case. But as far as establishing by a preponderance of the evidence that the firearm that was in the house was actually possessed in connection with drug trafficking activity, you know, there was, again, there was no drug or drug residues found anywhere. And I think that that's a key distinction between this circumstance and the cases with the government sites, because, you know, while, you know, things that could have innocent uses can be classified as drug paraphernalia, of course, those cases always included circumstances where there was drug residue or some kind of drug that bolstered that conclusion. And I think that's the key distinction here where you can't get over that preponderance of the evidence bar for that enhancement. All right. Thank you. Any other questions from the panel? All right. Thank you, Ms. Coon, Mr. Moses. We appreciate your arguments. The case will be submitted to us. We have the briefs. We'll look at the record and we'll get it decided. But thank both of you again for participating on these circumstances. You've both done very, very well. Nothing less than we would have expected. Thanks. Thank you, Your Honor.